**FILED**
**June 8, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0037 – *In re:  Grandparent Visitation of L. M., et al.*

WOOTON, J., concurring:

I concur with the majority's determination that petitioner mother failed to establish that the family court below abused its discretion in ordering a therapeutic reunification schedule aimed at establishing visitation with respondent grandparents and the children.  There is no question that this case presents heart-wrenching facts which are set against the backdrop of adults who are at odds, but all of whom who love and desire to protect and maintain meaningful relationships with these children.  As a result, the family court was faced with the unenviable task of adhering to its statutory obligations under the Grandparent Visitation Act, West Virginia Code §§ 48-10-101 to -1201 (2001), while navigating the intensely emotional positions of the parties.  In that regard, I write separately to respond to the dissenting justices' unfounded accusation that the family court—and the majority—has cruelly relegated these children to mandatory grandparent visitation in contravention of all applicable law and without regard to their best interests.

What must first be disabused, however, is the contention that the family court has ordered, and the majority sanctioned, "forced visitation" with respondents.  In its initial thirty-nine-page order, the family court painstakingly walked through the evidence presented, undertook the required statutory considerations and made findings, and then laid out a scrupulously designed reunification process *potentially* culminating in a counselor-supervised contact schedule and ultimately, a phased visitation schedule.  The order

1

required respondents to jointly undergo three counseling sessions with a licensed counselor specifically addressing appropriate conversations with the children and their proper role as grandparents relative to decision-making authority. Petitioner was likewise required to participate in a counseling session with the eldest children; concomitantly, the children's counselor (in the presence of the guardian ad litem) was to begin to "prepare the children for reunification with their paternal grandparents in a therapeutic setting" with specific assurances to the children that the process was not tantamount to "custody." After this required counseling, the reunification plan called for supervised contact "in a therapeutic, family counseling setting" on a weekly basis; each child was to "phase-in" to the sessions based on age. The involvement of the youngest, A. M., was deferred *entirely* to the discretion and judgment of the counselors and guardian ad litem.

Upon scheduling of a fifth family counseling session, the family court intended to schedule a review hearing to "*consider* the propriety of progressing visitation outside a therapeutic setting," with the caveat that "[a]s recommended by the GAL, contact should proceed as quickly or as slowly as the children and their counselors feel comfortable with." (Emphasis added). The court anticipated "multiple" review hearings over the course of several months. Only after completion of this process, "[w]hen it is determined by the Court that unsupervised visitation is appropriate," a phased visitation schedule was to be implemented. As caveat to all of the foregoing, the family court *twice* in its order stated that "if, any time, the [petitioner] has a good faith belief that any of the children are adversely and/or negatively affected by the visit to the point that it is detrimental to their

2

well-being," the process would immediately cease and a hearing held. Notably, at the time this order was entered, all of the therapists were in favor of visitation.

However, after entry of the initial order, the family court heard additional testimony from three therapists who then *no longer recommended visitation*[1] and, as a result, dramatically scaled back the already tentative reunification plan. In lieu of scheduled joint therapy sessions, the court substituted separate family counseling sessions for respondents and the children, stating that it would "defer to the appointed reunification therapist's recommendation as to the proper frequency of these visits." As to whether joint therapy would ensue at all, the court stated it would "defer to the discretion and recommendation of the reunification therapist as to if and when [] joint therapy sessions with the minor children and the [respondents] are proper." The court maintained its intention to conduct periodic review hearings but *unequivocally* withdrew any order of visitation and stated that any such future visitation "shall be carried out in accordance with the recommendations of the reunification therapist." Notably, the family court further specifically excluded the two youngest children from this process and ordered that their visitation with respondents would be addressed "at future hearings."

---

[1] These vacillating opinions alone demonstrate the difficulty presented by this case. The divided vote of this Court reflects similarly. Therefore, to characterize the outcome of this case as being callously indifferent to the best interests of the children and patently wrong demonstrates an unforgiving assessment of the complexity of this case.

Despite this meticulous, thorough, and thoughtful reunification plan by the family court, at least one dissent purports to be "astounded" by the majority's "inexcusable" affirmance of the plan. The dissenting justices accuse the courts below and the majority of ignoring the opinions of 1) the children's therapists; 2) the children themselves; and 3) petitioner, an otherwise fit parent—all in direct contravention of statutory law and United States Supreme Court precedent. However, nothing could be further from the truth. In fact, it is the dissenting opinions which afford these three pieces of evidence improper weight and in so doing sends a confounding message regarding our statutory guidance and caselaw.

First, the dissenting justices accuse the majority of ignoring the opinions of the children's therapists that visitation was not in the children's best interests. As a threshold matter, the majority correctly observes that "expert opinions" are nowhere contained within the statutory factors to be considered by the court as set forth in West Virginia Code § 48-10-502. To therefore give the therapists' opinions seemingly dispositive weight, as do the dissents, is completely outside of the statutory construct. Further, none of these therapists were court-ordered experts; rather, they were privately retained healthcare providers who commendably and properly advocated for what their professional judgment suggested was the most cautious course for their clients. However, to suggest that the court must necessarily comply with the consensus of privately retained mental health professionals would be a complete abdication of a court's role in these

4

matters and render the statutory factors irrelevant.[2] Were such opinions entitled to extraordinary weight, the Legislature would have, at a minimum, included expert opinions as a specifically delineated factor under West Virginia Code § 48-10-502. Were their opinions dispositive, as the dissents suggest, the Act would undoubtedly direct a family court to make a referral and await the therapist's verdict on whether visitation should occur.

More importantly, however, the dissenting justices' position that the therapists' testimony was disregarded is utterly meritless. It is precisely *because of* the therapists' wavering testimony that the family court amended its initial reunification process with settled visitation increments, in lieu of a deferential reunification process, as laid out in detail *supra*. The order on appeal places the decision of "*if and when*" the children and respondents engage in joint therapy entirely to the reunification therapist. (Emphasis added). Most significantly, it defers the ultimate issue of visitation almost entirely to the judgment of the reunification professional, ordering that visitation "shall be carried out *in accordance with the recommendations of the reunification therapist*." (Emphasis added). In so doing, after considering the weight of the statutory factors which clearly favored visitation, the family court did exactly as the dissents insist: deferred the

---

[2] By no means do I suggest, however, that these professionals were "hired guns." Rather, as the family court determined based upon testimony elicited from the therapists, they were obligated to advocate for their clients, unconstrained by required statutory considerations which go well beyond the subjective wishes of minor children and reflect the Legislature's attempted balance of competing rights and interests.

logistical handling of whether and how visitation is to ensue squarely within the seasoned judgment and supervision of an expert, the court-appointed reunification counselor.

Next, the dissenting justices grossly oversimplify the weight to be given to the wishes of the children and a fit parent, one dissent suggesting their unified preference must prevail and stating that "ultimately the fit parent must be permitted to make good faith decisions regarding her children." If this were the law, there would be no need for grandparent visitation litigation at all. When grandparent visitation litigation ensues, there is already a conflict between a parent and the grandparents, by definition. The children, depending on their ages, likely have a position on visitation aligning with one party or the other. Under the dissenting justices' approach, whichever party the children favor is the victor. Here, because petitioner and the children were against visitation, one of the dissents concludes their preferences were necessarily ignored—a conclusion that ignores the fact that the statutory factors the family court was required to consider *overwhelmingly* weighed in favor of visitation. According to the dissenting justices, should the party with whom the children side hire an expert who advocates for their position, the matter is definitively closed. None of this comports with the statutory requirements or the law on parental preference.

Primarily, however, the dissenting opinions simply misunderstand the role the statutory factors contained in West Virginia Code § 48-10-502 serve in determining the best interests of the child. Both dissenting opinions cavalierly and summarily declare the

majority to be apathetic to the children's best interests on the one hand, yet on the other hand, entirely disregard the statutory factors which are expressly designed to inform the determination of their best interests. The statutory factors are not merely a punch list serving as window dressing for a court order which ultimately rules in favor of whatever a parent and children want. Rather, the factors endeavor to provide *objective* information—based on prior relationships, course of conduct, and the behaviors and abilities of the parties—which creates a sliding scale designed to measure the benefit of grandparent visitation to a child's best interests. Should these factors demonstrate by a "preponderance of the evidence" that visitation is in the best interest of the child, the court is obligated by law to grant it. *See* W. Va. Code § 48-10-702 (2001).

A litigated grandparent visitation case comes prefabricated with conflict. The statutory factors so casually disregarded by the dissents aim to remove the blurring effect of the parties' complex relationships and interests; they seek to guide consideration of a child's best interests relative to a continued relationship with his or her grandparents. Nothing in our statutory scheme permits a court to disregard these factors altogether and make a determination based upon the greater weight of the parties' biased preferences, all under the auspices of the predominating "best interests." Rather, the factors are to be utilized to create a fuller understanding of the parties' historical relationships and present abilities, free from the bias of the litigants, with the ultimate goal of an impartial arbiter determining what is likely in a child's short-term, long-term, and large-scale "best interests."

In the same breath that the dissenting justices accuse the majority of giving the statutory factors too much weight, they afford them exactly none. In accusing the majority of giving a fit parent's preference *no* weight, the dissents lend it *dispositive* weight. In vilifying the family court and the grandparents for presumptuously deciding they "knew better" what was in the children's interests, the dissents do precisely the same. It is exactly this type of case for which our standard of review was designed, allowing the lower courts with first-hand observations and interactions with the affected parties to make carefully discerned determinations and create remedies which best serve complex familial relationships, all in compliance with applicable law. The dissents do nothing more than denigrate the undeniable care with which the family court handled this most delicate matter and seek to substitute their own "better" judgment in a case they view strictly on a cold record, from arms-length.

Accordingly, I concur in the majority's affirmance of the family and circuit courts' orders.